UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11300-RGS

FRANCISCO RODRIGUEZ-GUARDADO

v.

YOLANDA SMITH[1]

MEMORANDUM AND ORDER
ON THE GOVERNMENT'S MOTION TO DISMISS

September 22, 2017

STEARNS, D.J.

By way of a petition for writ of habeas corpus, Francisco Rodriguez-Guardado (Rodriguez) challenges the legality of his detention[2] since July 13, 2017, by Immigration and Customs Enforcement (ICE). The government

---

[1] Respondent is the superintendent of the Suffolk County House of Correction, where petitioner is currently detained.

[2] Under the Real ID Act of 2005, "[n]otwithstanding any other provision of law (statutory or nonstatutory) . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act . . . ." 8 U.S.C. § 1252(a)(5). A district court retains jurisdiction over "'pure' habeas petitions" that challenge an alien's detention independent of removal. *Parinejad v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 501 F. Supp. 2d 280, 282 (D. Mass. 2007); *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005).

moves to dismiss the petition. In reaching its decision, the court has carefully considered the parties' briefs, petitioner's motion for a temporary restraining order (TRO) (including the arguments presented at the TRO hearing), as well as the amicus brief filed by the American Civil Liberties Union of Massachusetts.

Rodriguez, a citizen of El Salvador, illegally entered the United States in 2006. In 2011, the Bureau of Immigration Appeals (BIA) affirmed the denial of Rodriguez's application for asylum, and issued a final order of removal. Rodriguez did not seek further review from the Tenth Circuit Court of Appeals. From 2012 until 2016, ICE four times granted a one-year discretionary stay of deportation. Rodriguez's most recent one-year stay expired in March of 2017. In June of 2017, ICE denied a fifth request for a discretionary stay and ordered Rodriguez to present himself at ICE's Boston office on July 13, 2017, with a prepaid plane ticket to El Salvador in hand. On July 11, 2017, Rodriguez filed motions with the BIA seeking to reopen his removal proceeding and for an emergency stay of deportation. On July 13, 2017, when Rodriguez reported to the ICE office with a plane ticket showing a September departure date, he was taken into custody. Later that same day, Rodriguez filed the instant habeas petition with this court. Shortly thereafter, the BIA allowed Rodriguez's motion to stay removal pending the

resolution of his motion to reopen. As of the date of this decision, Rodriguez's motion to reopen is still pending before the BIA and he remains in ICE custody.

The government avers, without opposition, that ICE detained Rodriguez on July 13, 2017, with the intent of executing the final order of removal. But for judicial intervention, ICE would have transferred petitioner out of the District of Massachusetts on July 17, 2017, for removal to El Salvador three days later, on July 20, 2017. *See* Marfissi Decl., Dkt. # 17-1. The government contends that Rodriguez's detention is authorized by 8 U.S.C. § 1231(a)(2), which mandates that "the Attorney General shall detain the alien" for 90 days (the so-called "removal period") to effectuate a removal order.

Petitioner and amicus argue that § 1231(a)(2) does not authorize petitioner's current detention because the removal period has long ago expired. Section 1231(a)(1)(B) defines the "removal period" to begin on the latest of three discrete events. The only event applicable to Rodriguez is "[t]he date the order of removal becomes administratively final."[3] 8 U.S.C.

---

[3] The other two events for determining the beginning of the "removal period" are

§ 1231(a)(1)(B)(i). Rodriguez's order of removal became administratively final on July 18, 2011. According to petitioner and amicus, the 90-day removal period, computed from that date, expired in October of 2011. Petitioner also asserts that the presumptively reasonable detention window of six months, as delineated by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 700-701 (2001), has also lapsed.

The government contends that, even if the start of the removal period is properly dated to July of 2011,[4] § 1231 authorized Rodriguez's continued detention. Section 1231(a)(1)(C) expands the removal period beyond 90 days "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or *acts to*

---

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(ii)-(iii). Petitioner did not seek judicial review of his removal order, nor has he been detained other than in an immigration process.

[4] The government suggests that because § 1231(a)(1)(B) is silent as to the effect of a discretionary administrative stay on the start of the removal period, the court should defer to ICE's interpretation of the statute that the discretionary stay tolls the start of the removal period. *See Garcia v. Sessions*, 856 F.3d 27, 39 (1st Cir. 2017) (deferring to the BIA's reasonable interpretation of ambiguities in an immigration statute).

4

*prevent the alien's removal* subject to an order of removal." (Emphasis added). Seeking and securing a discretionary stay unquestionably prevents petitioner's removal.

Petitioner and amicus rely on *Arevalo v. Ashcroft*, 260 F. Supp. 2d 347 (D. Mass. 2003),[5] for the proposition that only acts tainted by "bad faith, dishonesty, or improper behavior" come within the ambit of § 1231(a)(1)(C). *Id.* at 349. The court in *Arevalo*, applying the interpretive canon of *noscitur a sociis* – a word is known by the company it keeps – reasoned that because "acts" follows immediately after the word "conspires," a term connoting secret, improper, or unlawful action, the term "acts" necessarily encompasses only steps taken in bad faith. *See id.* If that premise is accepted, and given that Rodriguez pursued relief legitimately and in good faith, it follows that the discretionary stays did not operate to extend his removal period.

This court respectfully disagrees with *Arevalo*'s syllogism. The disjunctive juxtaposition of "conspires or acts" more naturally captures a distinction between collusive conduct and personal action. To the extent that the use of the word "conspires" suggests an illegitimate purpose, it connotes

---

[5] *Arevalo* was subsequently vacated on mootness grounds. 386 F.3d 19 (1st Cir. 2004).

5

a collaborative effort to thwart the execution of a removal order, the stated purpose of § 1231 (entitled "Detention and removal of aliens ordered removed"). It is impossible to overlook that Congress, in setting out the first conditional of the subsection, incorporated a good faith requirement ("fails or refuses to make timely application *in good faith*"), and could have easily inserted a like qualification in the second conditional ("conspires or acts *in bad faith*"), but did not. "We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005). Consistent with this common-sense reading of § 1231(a)(1)(C), numerous courts, including the First Circuit, have found delays attributable to an alien's legal challenges to a removal order to extend the 90-day removal period. *See, e.g.*, *Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006) ("Lawrence's continued detention here occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order."); *Roach v. Holder*, 344 Fed. App'x. 945, 947 (5th Cir. 2009) ("[R]epeated filings with the BIA constituted acts to prevent [] removal."); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.4 (11th

6

Cir. 2002) (a stay of deportation pending judicial review extended the removal period).[6]

Moreover, even assuming that the "removal period" had for some reason expired, the government plausibly maintains that it has statutory authority to hold Rodriguez under 8 U.S.C. § 1231(a)(6). The statute provides that "[a]n alien ordered removed who is inadmissible under [8 U.S.C.] section 1182 . . . may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Rodriguez does not dispute that that he has been ordered removed and is therefore inadmissible under § 1182(a)(6)(A)(i).

Petitioner and amicus fault ICE, however, for failing to follow its own regulations providing for a post-removal-period custody determination; *see* 8 C.F.R. § 241.4 (e)-(f) (listing the criteria for post-removal period release), and contend that Rodriguez would qualify to be released with conditions if such a custody determination were made.[7] But the regulations do not require

---

[6] The court also agrees with the government that petitioner's preferred reading of the statute would lead to an incongruent (and perhaps unintended) result. If the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion.

[7] The court has no cause to doubt the representation that Rodriguez is an outstanding member of his community and a good family man.

7

a determination hearing when, as here, the execution of a removal order is impending. *See* 8 C.F.R. § 241.4(g)(4) ("The Service will not conduct a custody review under these procedures when the Service notifies the alien that it is ready to execute an order of removal."). The fact that petitioner's motion to reopen the removal proceedings remains pending does not lead to a different result. *See* 8 C.F.R. § 241.4(b)(1) ("An alien who has filed a motion to reopen immigration proceedings for consideration of relief from removal . . . shall remain subject to the provisions of this section unless the motion to reopen is granted.").

Nor is there any traction to Rodriguez's argument that his continued detention without a release determination amounts to a denial of due process. The Supreme Court in *Zadvydas* fixed a presumptively reasonable removal detention duration of six months.[8] 533 U.S. at 700-701. As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process.

Finally, petitioner presses an ineffective assistance of counsel (IAC) claim. Petitioner faults his prior attorneys for failing to inform him of the S-

---

[8] Petitioner's contention that the *Zadvydas* clock runs while he is not in custody "defies common sense." *Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011).

visa program (explained below) when, in 2006, he provided material assistance to law enforcement, or subsequently when he applied for asylum, and then finally, when he sought BIA review of the denial of his asylum application. Assuming without deciding that this court has jurisdiction,[9] I agree with the government that petitioner has not pled a viable IAC claim.

Effective assistance of counsel in the usual sense is a right conferred by the Sixth Amendment on defendants in criminal proceedings.

> While aliens have no constitutional right to counsel in removal proceedings, they are entitled to due process. *See Lozada v. INS,* 857 F.2d 10, 13 (1st Cir. 1988). Thus, ineffective assistance of counsel in a removal proceeding may constitute a denial of due process if (and to the extent that) the proceeding is thereby rendered fundamentally unfair. *Id.*

---

[9] The REAL ID Act stripped district courts of jurisdiction to review "by habeas corpus," "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). The government contends that, because the relief ultimately sought by petitioner through his IAC claim is the nullification of his removal order (the execution of which authorizes his detention), this court lacks jurisdiction to review the claim. Petitioner counters that because the IAC claim arose prior to his removal proceedings, it is independent of the removal order. *See, e.g., Singh v. Gonzalez*, 499 F.3d 969, 979 (9th Cir. 2007) (district court has jurisdiction over "narrow" IAC claim resulting from attorney's failure to timely file an appeal of a removal order because petitioner's only remedy would be "nothing more than" another appeals period).

*Guerrero-Santana v. Gonzales*, 499 F.3d 90, 93 (1st Cir. 2007). Fatal, however, to petitioner's IAC claim is the long-accepted rule that "[d]ue process rights do not accrue to discretionary forms of relief." *Ticoalu v. Gonzales*, 472 F.3d 8, 11 (1st Cir. 2006). In *Ticoalu*, the First Circuit held that the petitioner did not state a cognizable due process claim with respect to the one-year time constraint to apply for asylum because asylum is a form of discretionary relief. *Id.* The same is true for the grant of an S-visa.

> The so-called "S visa" derives from 8 U.S.C. § 1101(a)(15)(S), which gives the Attorney General authority to grant a nonimmigrant visa to a person "in possession of critical reliable information concerning a criminal organization or enterprise . . . [who] . . . has supplied such information to Federal or State law enforcement authorities or a Federal or State court; and whose presence in the United States the Attorney General determines is essential to the success of an authorized criminal investigation . . . ." . . . A request for an S visa "may only be filed by a federal or state [law enforcement agency]" through the filing of a Form I-854, which is then submitted for *discretionary approval* by the proper government officers as detailed in 8 C.F.R. § 214.2(t)(4).

*Morgan v. Gonzales*, 495 F.3d 1084, 1088-1089 (9th Cir. 2007) (emphasis added). That ends the due process-IAC discussion.[10]

---

[10] The government also argues that petitioner has not adequately alleged facts to infer that he is reasonably likely to succeed on the prejudice prong of the IAC claim. *See Wang v. Ashcroft*, 367 F.3d 25, 28 (1st Cir. 2004) ("[I]n order to demonstrate ineffective assistance of counsel, the alien client must demonstrate that counsel's action or inaction rendered the immigration proceeding 'so fundamentally unfair that the alien was prevented from reasonably presenting his case,' and that there is a reasonable probability that counsel's conduct resulted in actual prejudice to

Because petitioner has not identified a procedural deprivation, he cannot sustain a due process claim.[11]

---

the case." (citation omitted)). Petitioner does not allege that the law enforcement agency with whom he cooperated would have agreed to seek an S-visa on his behalf. In any event, only 250 S-visas may be issued in a fiscal year, 8 U.S.C. § 1184(k)(1), making it an exceedingly rare form of relief. *See* 1 Immigr. Law and Defense § 3:129 (29 S-visas were approved in fiscal year 2013). The government additionally seeks the dismissal of the IAC claim because Rodriguez did not comply with the procedural requirements set out in *Matter of Lozada*, 19 I & N Dec. 637, 639 (BIA 1988) ("A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts."). *See Lawrence*, 446 F.3d at 226 (declining to review an IAC claim for failure to comply with *Lozada*).

[11] Petitioner relies on *Hamama v. Adducci* (multiple opinions) for the further argument that ICE's attempt to detain and expeditiously remove him violates the Suspension Clause (which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. 1 § 9, cl. 2). In *Hamama*, the court found that the REAL ID Act as applied under the circumstances presented resulted in a Suspension Clause violation because the detainees' efforts to seek legal assistance against immediate removal were "significantly impeded by the Government's successive transfers of many detainees across the country, separating them from their lawyers and the families and communities who can assist in those legal efforts." *Hamama v. Adducci*, 2017 WL 3124331, at *1 (E.D. Mich. Jul. 24 2017). "The totality of these facts leads to the conclusion that casting Petitioners out of this court without a stay – in the extraordinary context of this case – would ignore the reality that the process for judicial review provided for in the Real ID Act would not be adequate or effective in protecting their habeas rights." *Hamama v. Adducci*, 2017 WL 2953050, at *12 (E.D. Mich. July. 11, 2017).

ORDER

For the foregoing reasons, the government's motion to dismiss is ALLOWED. The Clerk will enter the order of dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

Accepting *arguendo* the holding of *Hamama*, Rodriguez does not present the "extraordinary context" that the *Hamama* petitioners found themselves in. In contrast to *Hamama*, Rodriguez received ample notice of ICE's intent to carry out his removal order and has taken the opportunity to pursue available administrative remedies by lodging a motion to reopen with the BIA and securing a stay during the pendency of the motion. The government has represented that it will not transfer Rodriguez out of this judicial district until the conclusion of these proceedings. This court has considered petitioner's habeas contentions on their merits. Petitioner's articulated concern that he cannot adequately pursue further appellate review, should the BIA deny his motion to reopen and he is deported, is at best speculative, and in any event, a matter for the Court of Appeals to address.